IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | Case No. 1:08-cr-55-WHA |
| | ) | [wo] |
| RONNIE LEE WARREN | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This cause is before the Court on a *Motion to Suppress* filed by Defendant Ronnie Lee Warren ("Defendant" or "Warren") and the United States' *Response to Defendant's Motion to Suppress*. *See* Doc. 13, "Motion to Suppress"; Doc. 15, "Response." Warren challenges evidence seized by officers during the execution of a search warrant at his home. After the evidentiary hearing on June 30, 2008 and upon due consideration of briefs, arguments, and applicable law, the Court determines the search warrant was sufficient and thus, recommends that the District Court **DENY** the motion to suppress.

### I.   FACTUAL BACKGROUND AND MOTION TO SUPPRESS

On December 11, 2007, Alabama District Judge Charles W. Fleming, Jr. of Geneva County, Alabama issued a search warrant to Investigator Annie Henderson ("Investigator Henderson") of the Geneva County Sheriff's Department to search Warren's residence located at 314 South Ripley, Samson, Alabama. *See* Doc. 13, Exhibit A "Search Warrant." The affidavit completed by Investigator Henderson avers she had probable cause to believe crack cocaine was located at the above address. *Id.* Specifically, Investigator Henderson

stated she had directed a Confidential Informant ("CI")[1] to purchase cocaine from Warren and the purchase took place at Warren's residence. *Id*. Investigator Henderson also said the CI has proven reliable through controlled narcotics buys and information provided by the CI has been corroborated through other sources. *Id*.

During the hearing, Investigator Henderson also testified as to the specifics of the controlled narcotics buy on December 11, 2007. Investigator Henderson testified the CI was a person she used on previous occasions who had proven reliable in the past. Investigator Henderson further testified she met with the CI and after a search of the CI and his vehicle, the CI was given $100.00 and a digital recorder. The digital recorder was turned on before the CI left to make the controlled buy. Investigator Henderson followed the CI to Ripley and Highway 52, and remained there to avoid being seen by Warren or any other persons living in the area while the CI continued to Warren's residence. After the narcotics buy, the CI returned to Investigator Henderson. Investigator Henderson took the $100.00 worth of crack cocaine and stopped the digital recording. The CI informed Investigator Henderson he gave Warren the buy money in front of Warren's residence. Warren then went back into the house and returned with the crack cocaine. Investigator Henderson listened to the recording and was able to identify the voices of the CI and Warren. Investigator Henderson said she was familiar with Warren's voice because Warren spoke to her on numerous occasions prior to

---

[1] For the purposes of this opinion, the Court shall use masculine grammatical terms including "him," "his," and "he" when discussing the CI. This should not be construed to indicate the gender of the CI, but rather is simply for consistency and avoidance of using he/she, him/her, his/hers.

December 11, 2007.

After the controlled narcotics buy, Investigator Henderson testified she completed the paperwork relating to the controlled buy and the request for a search warrant. Investigator Henderson then went before Judge Fleming at 1:12 p.m. to request the search warrant for Warren's residence. The search was conducted on December 11, 2007 at 3:30 p.m. *See* Doc. 13, Exhibit A.

On May 8, 2008, Warren filed this Motion to Suppress asserting several general arguments. First, Warren asserts the search warrant is invalid because it does not provide any information as to the reliability of the confidential informant. *Id.* at p. 3-8. Next, he avers the affidavit includes false information. *Id.* at p. 7. Finally, Warren argues the information provided was stale and inherently unreliable. *Id.* at p. 7-8.

## II.  DISCUSSION AND ANALYSIS

**A.  Validity of the Search Warrant**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause to support a search warrant exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999); *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). "The nexus between the objects to be seized and the premises searched can be established from the

particular circumstances involved and need not rest on direct observation." *Jenkins*, 901 F.2d at 1080 (quoting *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982)).

A court reviewing the issuance of a search warrant by a Judge is not to conduct a *de novo* probable cause determination and should give deference to the decision of the judge issuing the warrant. *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984) (per curiam). Rather, the role of the reviewing court is merely to decide whether the evidence viewed as a whole provided a "substantial basis" for the finding of probable cause at the time the warrant was issued. *Id.* at 732-33, 104 S.Ct. at 2088. Specifically, when reviewing a warrant application, a judge is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (citing *Gates*, 462 U.S. at 238, 103 S.Ct. 2317); *accord United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990). Thus, "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329). In other words, the probable cause determination is made based on the "totality of the circumstances." *Id.*[2]

---

[2] *Gates* abandoned the two-pronged test derived from *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984) (Supreme Court reiterates that it had not refined the *Aguilar* and *Spinelli* two-
(continued...)

Based on this totality of the circumstances approach, "[c]ourts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [judges] in their probable cause determination." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (citations omitted). In other words, the reviewing court must decide whether there was a "substantial basis" to find probable cause solely upon consideration of the information presented to the issuing judicial officer. *Lockett*, 674 F.2d at 845.

    i.    **Use of Confidential Informant**

Warren alleges the affidavit lacks sufficient information to establish probable cause for the search warrant to issue because there is no evidence of "any independent police work designed to corporate [sic] the informant's allegations prior to seeking the warrant." *See* Doc. 13 at p. 4. However, independent police corroboration of a confidential source's

---

²(...continued)
pronged test, but rather had rejected it in *Gates*). Instead, courts now applies a "totality of the circumstances" test as outlined in *Gates*. 462 U.S. at 230-35, 103 S.Ct. at 2328-31. "[U]nder the *Gates* totality of the circumstances test, the 'veracity' and 'basis of knowledge' prongs of *Aguilar*, for assessing the usefulness of an informant's tips, are not independent. They are better understood as relevant considerations in the totality of the circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensation for by a strong showing as to the other." *Brundidge*, 170 F.3d at 1352 (quoting *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329); *see also United States v. Ridolf*, 76 F.Supp.2d 1305, 1308 (M.D. Ala. 1999) (Albritton, J.) (citing *Brundidge*). In his Motion to Suppress, Warren argues that the affidavit did not satisfy the two-pronged test from *Aguilar* and *Spinelli*. *See* Doc. 13 at p. 3. However, as clearly shown, this two-pronged test is no longer valid, and so this Court applies the required "totality of the circumstances" test described in *Gates* and its progeny.

information is not a per se rule under the totality of the circumstances test. *See Brundidge*, 170 F.3d at 1353 ("[R]equiring independent police corroboration - as a per se rule in each and every case - is contrary to *Gates*..."); *United States. v. Young*, 229 F.Supp.2d 1325, 1330 (M.D. Ala. 2002) (citing *Brundidge*); *Ridolf*, 76 F.Supp.2d at 1309 (same).

Through her testimony, Investigator Henderson made it clear that she had first hand knowledge of the events as she was personally involved in the operation. Although this corroboration is not necessary in every case, courts have discussed the "value of corroboration of details of an informant's tip by independent police work." *Ridolf*, 76 F.Supp.2d at 1309 (citations omitted). In the case at hand, Investigator Henderson testified she set up a controlled buy using a CI with whom she was familiar. She further described the process involved in a controlled narcotics buy. The CI was searched before his meeting with Warren. After the search, the CI was given money provided by the government and a digital recorder to use during the controlled buy. The digital recorder was turned on by Investigator Henderson before the CI left for his meeting with Warren. When the CI returned from his meeting with Warren, he was searched again. He gave Investigator Henderson the cocaine base he bought from Warren. The fact the controlled buy was not actually observed by Investigator Henderson does not vitiate a finding of probable cause. *See Ridolf*, 76 F.Supp.2d at 1309 n. 2 (Given the strict controls placed upon the informants by the government during the transaction, the fact that the government searched them before and after the transaction, and monitored them during the transaction, it strongly suggests these informants were telling the truth. Further, the fact the transaction was unobserved and the

officer could not independently confirm the drugs were purchased from the defendant did not vitiate the finding of probable cause.).

### ii.    *Franks* Challenge

Warren alleges the affidavit contains either material false representations or omissions with respect to alleged buy by the Confidential Informant. *See* Doc. 13 at p. 7. Specifically, Warren states "[i]t is the contention of the Defendant that the alleged buy on December 11, 2007 never took place and that is [sic] was simple [sic] manufactured in order to get within the seventy-two (72) hour rule that in essence requires the confidential informant to have seen the controlled substance in the residence within the last seventy-two (72) hours." *Id*. This is the extent of Defendant's argument, so the Court can only presume Warren attempts to assert a *Franks* challenge.³ *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request to determine the admissibility of the fruits of the search. *Id*. at 155-56, 98 S.Ct. at 2676; *United States v. Aisenberg*, 358 F.3d 1327, 1333 (11th Cir. 2004) (citing *Franks*). This deliberate falsity or reckless disregard whose impeachment is permitted is only that of the

---

³    It is important to note Defendant never cites to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

affiant, not of any nongovernmental informant. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. If at the hearing the allegation is "established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on its face of the affidavit." *Id*. at 156, 98 S.Ct. at 2676.

This *Franks* reasoning also applies to information omitted from warrant affidavits. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). That is, "a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." *Id*. (citations and internal quotations omitted). However, omissions that are merely negligent, insignificant, or immaterial will not invalidate a warrant. *Id*. at 1327. "Indeed, even intentional or reckless omissions will invalidate a warrant only if the inclusion of the omitted facts would have prevented a finding of probable cause. *Id*. (citing *Jenkins*, 901 F.2d at 1080).

> The Supreme Court specifically held:
>
> To mandate a [*Franks*] evidentiary hearing the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or other reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171, 98 S.Ct. at 2684; *United States v. Arbolaez*, 450 F.3d 1283, 1294

(11th Cir. 2006) (citations omitted). Allegations of negligence or innocent mistake are insufficient. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. Thus, it is Defendant's burden to make the "substantial preliminary showing" that would entitle him to a hearing. *Arbolaez*, 450 F.3d at 1294.

Warren fails to particularize the alleged misrepresentations beyond a conclusory statement that the alleged buy never took place and was manufactured by the affiant. *See* Doc. 13 at p. 7. Warren did not make specific arguments nor does he make an offer of proof in support of his claim of deliberate falsehood in the affidavit. Warren does not provide a statement of reasons, nor does he provide sworn or other reliable statements of witnesses or explain their absence.[4] As such, he fails to establish he is entitled to a *Franks* hearing.

Nonetheless, the Court credits the testimony of Investigator Henderson that the controlled buy did happen on the same day as the issuance of the search warrant by Judge Fleming.

### iii.   Staleness Doctrine

Warren's next argues the search warrant is fatally stale because the time between the

---

[4] Also pending before the Court is Warren's *Motion to Reveal Identity* (Doc. 18, filed May 12, 2008) wherein he requests the identity of the confidential informant in order to subpoena him/her for the Suppression Hearing. The Government filed its response (Doc. 20, filed on May 13, 2008), and the Court held a telephonic hearing on the matter on May 14, 2008. After hearing the arguments of the parties, the Court denied the motion to the extent it sought to compel the information prior to the suppression hearing. Warren's grounds listed in the motion did not state this was to be used as part of a *Franks* challenge and so the Court declines to interpret it as such. The Court shall rule separately on whether the identity of the confidential informant should be provided to the defendant at any point in the proceedings. *See* Doc. 22, "Minutes of Telephonic Hearing."

alleged most recent controlled buy and the issuance of the search warrant rendered the warrant fatally stale. *See* Doc. 13 at p. 7. Warren asserts the information supporting the search warrant was stale and therefore could not establish probable cause to support issuance of the search warrant on December 11, 2007. Warren's argument rests on his assertion the controlled buy on December 11, 2007 did not occur. Warren concedes that if the controlled buy took place on December 11, 2007, the warrant was not stale. Since this Court already determined Warren is not entitled to a *Franks* hearing, the affidavit stands on the fact a controlled buy by a confidential informant took place "within the past 48 hours." Further, Investigator Henderson's testified the controlled buy took place on December 11, 2007. Thus, the Court must decide whether the controlled buy on December 11, 2007 was too distant in time from the execution and issuance of the warrant as to render the information stale and the warrant invalid.

Probable cause is time specific - that is, at the time the search warrant issues, there must be cause to believe the items described in the search warrant will be at the specified location. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (citing *United States v. Domme*, 753 F.2d 950, 953 (11th Cir. 1985)). Accordingly, the information supporting a search warrant must be timely. *Id*. "Warrant applications based upon stale information fail to create probable cause that similar or other improper conduct is continuing." *Id*. (citing *United States v. Bascaro*, 742 F.2d 1335, 1345 (11th Cir. 1984)). The Eleventh Circuit has defined stale search warrants as:

> warrants that, when issued, were based on information too old to create a

> sufficient probability that the items sought were still at the location to be searched. In other words, the passage of time made it more likely that the circumstances upon which the warrant was issued had changed, thus dissipating probable cause.

*United States v. Santa,* 236 F.3d 662, 672 n.15 (11th Cir. 2000) (citation omitted). Courts have held that "the information supporting the government's application for a warrant must show that probable cause exists <u>at the time the warrant issues</u>." *United States v. Bervaldi,* 226 F.3d 1256, 1264 (11th Cir. 2000) (citing *Harris*, 20 F.3d at 450) (emphasis added). "There is no particular rule or time limit for when information becomes stale." *Id.* at 1265. Rather, "staleness is an issue which must be decided on the peculiar facts of each case." *Bascaro,* 742 F.2d at 1345 (quoting *United States v. Hyde,* 574 F.2d 856, 865 (11th Cir. 1978)). However, there are factors which should serve as guidance in this area:

> In addition to the length of time, courts should consider the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.' For example, the former Fifth Circuit held that four-month-old reports of projectiles in the walls and floors of a dwelling as a result of the test-firing of the murder weapon were not stale because the 'floors and walls of a house are relatively permanent fixtures and would not likely be subject to removal over the period of four months.

*Bervaldi,* 226 F.3d at 1264 (internal citations and footnotes omitted). In considering the nature of the crime, the Courts have "distinguished between criminal activity which is protracted and continuous and that which is isolated." *Id.* at 1265 (quoting *Bascaro*, 742 F.2d at 1345-46). For instance, "where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct,

time is of less significance." *Id.* (quoting *Bascaro,* 742 F.2d at 1345-46).

Turning to the evidence before the Court, the affidavit in question outlines the controlled buy made by the Confidential Informant on December 11, 2007, mere hours prior to the search warrant's issuance.[5] While these facts do not set forth any indication the Warren residence was part of a large-scale drug trafficking operation, they give reason to suspect that at the time of the controlled buy the Warren residence was a location to buy or sell drugs. "By its nature, drug-dealing is an ongoing activity, not an isolated occurrence." *United States v. Williams*, 177 Fed. Appx. 914, 918 (11th Cir. 2006) (unpublished). Thus, "[i]t is reasonable to infer that the use of a house for the sale of drugs will continue over some period of time." *Id.* (internal citations and quotations omitted). The few hours between the controlled buy and the issuance of the warrant is not so distant in time to undermine this inference. The Court therefore finds the short period of time between the controlled buy and the issuance of the warrant did not render the information in the affidavit stale at the time the warrant issued, as there was a sufficient probability that the items were still at the location to be searched. *See, e.g., United States v. Wright*, 811 F. Supp. 1576, 1581 (S. D. Ga. 1993) (finding no staleness argument where the affidavit in support of the search warrant described, among other things, a controlled buy of narcotics 48-hours before issuance); *United States*

---

[5] The affidavit completed by Inspector Henderson never indicates the alleged buy occurred on December 11, 2007, but rather states "[w]ithin the past 48 hours I, Inv. Annie Henderson, have used a confidential reliable informant to purchase crack cocaine from Ronnie "Buckeye" Warren. This purchase took place at 314 South Ripley Street Samson, Alabama, the residence of Warren." However, during the hearing, Investigator Henderson explicitly testified the controlled buy occurred on December 11, 2007.

*v. Whiddon*, 146 Fed. Appx. 352, 355 (11th Cir. 2005) (unpublished) (finding probable cause where, among other facts, the single controlled buy from defendant occurred within 72 hours of the swearing of the affidavit).

The Court also finds that the information in the warrant was not stale at the time of execution on December 11, 2007. Mere hours had passed since the warrant's issuance. *See* Doc. 13, Exhibit A; Doc. 15, Exhibit A. This time period is certainly lawful under Federal Rule of Criminal Procedure 41(e)(2)(A)(ii) and Ala. Code § 15-5-12, both of which require execution of the warrant within ten days.

**B.    The *Leon* Good Faith Exception**

In any event, the *Leon* good faith exception to the Exclusionary Rule applies in this case. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* good faith exception "stands for the principle that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v. Robinson*, 336 F.3d 1293, 1295-96 (11th Cir. 2003) (citing *United States v. Martin,* 297 F.3d 1308, 1313 (11th Cir. 2002)); see also Sheppard, *468 U.S. at 981-82, 104 S.Ct. at 3425* (good faith exception to exclusionary rule where officers placed reasonably objective reliance on a search warrant later determined to be defective). There are only four situations where the good faith exception does not apply:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the

> issuing magistrate wholly abandoned his judicial role; (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient-i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

*Martin*, 397 F.3d at 1313 (citing *Leon*, 468 U.S. at 923, 104 S.Ct. 3405). There is no indication that these four situations occurred in this case.

First, as set forth above, there is no indication Judge Fleming was misled by the affiant based on falsity or reckless disregard of the truth. Second, there is no allegation or indication Judge Fleming wholly abandoned his judicial role. Third, the affidavit was not lacking in indicia of probable cause as to render belief in it unreasonable. The affidavit supporting the search warrant was not a "'bare-bone' statement of nothing more than conclusory allegations." *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). While the information provided is limited, the affidavit still provided sufficient factual details for Judge Fleming to consider and evaluate. More importantly, the determination regarding probable cause is not the issue, but rather whether the officers executing the warrant relied on that determination in good faith. *Id.* (citations omitted). The affidavit had sufficient information for the executing officers to reasonably rely upon Inspector Henderson's conclusion that there was a fair probability that contraband or evidence of a crime would be found at Warren's residence. Finally, there is no allegation the search warrant was facially deficient and the Court finds no reason to conclude so as it clearly provided the address and description of the residence and also provides a inventory of all property to be seized. *See*

Doc. 13, Exhibit A; Doc. 15, Exhibit A.

Further, in making the decision regarding good faith, the totality of the circumstances surrounding the issuance of the search warrant may be considered. *See United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985). From the totality of the circumstances in this case, the Court finds the good faith exception viable to preserve the fruits of the search even if there were errors made the issuance of the search warrant. Accordingly, the good faith exception precludes suppression of the evidence.

### III. CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant McWhorter's *Motion to Suppress* (Doc. 12) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **July 16, 2008.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 2nd day of July, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE