IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. Action No. 1:08-cr-55-WHA |
| | ) | |
| RONNIE LEE WARREN | ) | (WO) |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the Court on the Recommendation of the Magistrate Judge (Doc. # 38) issued on July 2, 2008, and Defendant Warren's ("Warren") objections filed on July 15, 2008 (Doc. # 40). On May 8, 2008, Warren filed a Motion to Suppress (Doc. # 13), claiming that the affidavit used to support the warrant was deficient. The Magistrate Judge recommended that Warren's motion be denied. Warren then filed objections to the Magistrate Judge's Recommendation. After a careful review of the record, including a transcript of the evidentiary hearing and all of the evidence considered by the Magistrate in making his Recommendation, and the objections raised by Warren, this court adopts the Magistrate Judge's Recommendation in full, as modified below.

### II. STANDARD OF REVIEW FOR A MAGISTRATE'S RECOMMENDATION

A district judge reviewing a magistrate judge's proposed finding should conduct a *de novo* review of the record. *See* 28 U.S.C. § 636(b). "Although *de novo* review does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record. If the magistrate makes findings based upon the testimony of witnesses, the

1

district court is obliged to review the transcript or listen to a tape-recording of the proceedings."
*Jeffery S. by Ernest S. v. State Bd. of Ed. of State of Georgia*, 896 F.2d 507, 513 (11th Cir. 1990);
*Holt v. Crist*, 233 Fed. Appx. 900, 901 (11th Cir. April 19, 2007).   A district judge has broad
discretion to accept, reject, or modify a magistrate judge's proposed finding. *United States v.
Raddatz*, 447 U.S. 667, 680 (1980); 28 U.S.C. § 636(b)(1).

### III. FACTS

          On December 11, 2007, at 1:12pm, Alabama District Judge Charles W. Fleming, Jr.,
("Judge Fleming") of Geneva County, Alabama, issued a search warrant to Investigator Annie
Henderson ("Henderson") of the Geneva County Sheriff's Department to search Warren's
residence. (Mot. to Suppress, Doc. # 13, Exh. A ("Search Warrant")).   In her warrant application,
Henderson testified by affidavit that she had probable cause to believe that crack cocaine was
located at Warren's residence. *Id.*   Her basis for this belief, as described in her affidavit, was her
use of "a confidential reliable informant" ("CI") to conduct a controlled buy of crack cocaine
earlier that morning from Warren at his residence. (*Id.*)   Henderson further stated that the
informant "has been proven reliable through controlled narcotics buys and information that the
confidential informant has given that has been corroborated through other sources." (*Id.*)
Henderson's affidavit also testified as to her knowledge, based on her training and experience,
that evidence such as additional drugs, large amounts of cash, weapons, stolen merchandise, and
business ledgers, is often concealed within residences as well as nearby vehicles and
outbuildings. (*Id.*)   After Judge Fleming issued the warrant at 1:12pm, Henderson and the
Geneva County Sheriff's Department executed a search of Warren's home at 3:30pm.

          At the suppression hearing, Henderson testified as to the manner in which the December

11, 2007 controlled buy was made. Henderson met with the CI, and after searching the CI and his[1] vehicle, gave him $100.00 and a digital recorder. Henderson turned the recorder on before the CI left to make the controlled buy. Henderson partially followed the CI, but then stopped and remained behind so as to avoid being recognized by Warren and any others in the area while CI continued to Warren's residence. When the CI returned to Henderson after the controlled buy had taken place, Henderson stopped the recording and took $100 worth of crack cocaine from the CI. The CI informed Henderson that he gave Warren the buy money in front of his house, at which point Warren entered the house and returned with the crack cocaine.[2] Henderson listened to the recording and was able to recognize and identify the voices of both the CI and Warren.[3]

On May 8, 2008, Warren filed a Motion to Suppress asserting three primary arguments.

---

[1] Because the CI's identity is currently confidential and unknown to the defendant for the time being (*see* Mot. for Discovery to Reveal Identity, Doc. # 18), the gender of the CI is unknown to this court. Because the gender is unknown, and because Henderson is female, this court will refer to the CI as a male for purposes of contrast and clarity.

[2] Although Henderson's testimony as to what the CI told her may be inadmissible at trial as hearsay, hearsay testimony may be considered when the court must merely determine whether there was probable cause to issue a search warrant. *Illinois v. Gates*, 462 U.S. 213, 241-42 (1983) ("An affidavit relying on hearsay is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented. Even in making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.").

[3] During the hearing testimony, Henderson explained that she had met Warren before when he had offered information on a drug dealer in Samson. They met at a location in Florida and talked for 30-45 minutes. From that point forward, he would call Henderson periodically and identify himself as "Buck," short for his nickname "Buckeye." He supplied Henderson with his cell phone numbers, which she stored in her cell phone, so that when he called identifying himself, his number matched up with the voice she recognized. Henderson testified that she recognized Warren's voice on the tape recorder because of the several periodic conversations she'd had with Warren when he had called from the cell phone numbers he gave her and identified himself by Warren's nickname.

First, Warren argues that the search warrant is insufficient because it provides no information as to the reliability of the confidential informant. (Mot. to Suppress at 3-8.)  Second, Warren argues that Henderson's affidavit contains false information, because he argues that the lack of supporting documentation suggests that no controlled buy ever took place on December 11, 2007. *Id.* at 7.  Third, Warren argues that, because no controlled buy took place on December 11, 2007, the warrant was stale. *Id.* at 3-8.

## IV. DISCUSSION

### A. Validity of the Search Warrant/Sufficiency of the Affidavit

In his Motion to Suppress, Warren argues that, under *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969), Henderson's testimony as to the CI's reliability alone, without further corroboration, was not enough to support a finding of probable cause. (Mot. to Suppress at 4.)  The Magistrate's Recommendation correctly notes that the two pronged test under *Aguilar* and *Spinelli* has been rejected in favor of the "totality of the circumstances" test described in *Illinois v. Gates*, 462 U.S. 213 (1983). (Recomm. at 4-5 n.2.) Under the "totality of the circumstances" test, probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999).  Instead of "knowledge" and "veracity" being two independent concepts, as under the former two-prong test, today a reviewing court merely "decide[s] whether the evidence viewed as a whole provided a 'substantial basis' for the finding of probable cause at the time the warrant was issued." *United States v. Robinson*, No. 2:06-cr-223, 2007 U.S. Dist. LEXIS 12072, at *18 (M.D. Ala. Feb. 21, 2007) (Capel, Mag. J.) (*quoting Massachusetts v. Upton*, 466 U.S. 727, 732-33 (1984) (per curiam)).  "[A] realistic and commonsense approach

4

should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to [warrant-issuing] magistrates in their probable cause determinations." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994).

This court agrees with the Magistrate Judge's rejection of Warren's argument that there was no independent corroboration of the confidential informant's reliability. (*See* Recomm. at 6.) In her testimony, Henderson described how Judge Fleming was familiar with Henderson and her work, and had issued warrants to her before. She further described, as she did in her warrant application, how she was familiar with her CI and had used him reliably in controlled buys in the past. Finally, Henderson's hearing testimony established the process of the controlled buy: how the CI was preliminarily searched for drugs or money, was given $100 in controlled buy money and a live tape recorder, was partially followed to the Warren residence, performed the controlled buy while being recorded, and returned with the recorder and $100 worth of crack cocaine. Upon examination of the digital recording, Henderson recognized Warren's voice, with which she had become familiar through past telephonic and interpersonal interactions with Warren. Although the CI did not enter the house and witness the drugs in the house, as Warren argues, Henderson testified that he waited outside while Warren entered the house and returned with the crack cocaine. Additionally, Henderson's lack of firsthand observation of the transaction itself, as the Recommendation notes, does not prevent a finding of probable cause, because the process by which the controlled buy took place supports a finding that the informant was credible. (Recomm. at 6-7 (*citing United States v. Ridolf*, 76 F. Supp. 2d 1305, 1309 n.2 (M.D. Ala. 1999) (Albritton, J.)).

This court therefore adopts the Magistrate Judge's finding that the totality of the evidence

5

presented, both in the warrant application and in the suppression hearing testimony, supports a finding of probable cause.[4]

## B. False information

_____Warren's second argument attacks the same purported lack of supporting evidence in a different way. The crux of Warren's argument is that the December 11, 2007 controlled buy never took place. Here, Warren argues that the failure to include in the warrant application any evidence receipt, deposition, or informant statement related to the December 11, 2007 controlled buy suggests that the controlled buy never took place, but was instead concocted by Henderson to avoid the possibility that the length of time between the warrant application and the next most recent controlled buy on December 5, 2007, would render the warrant stale. (Obj. to Recomm. at 5.) In other words, Warren argues above, in Part A, that the absence of documentation demonstrated a lack of sufficient evidence to constitute probable cause, whereas here he argues that the absence of certain documentation, when contrasted with the presence of such documentation in previous controlled buys, demonstrates that Henderson intentionally or recklessly concocted a fictitious controlled buy in order to "circumnavigate the requirements that

---

[4] Warren relies heavily on *Nathanson v. United States*, in which the United States Supreme Court reversed the affirmance of a warrant issued upon "a mere affirmation of suspicion and belief without any statement of adequate supporting facts." 290 U.S. 41, 46 (1933). Our case is different in two ways. First, the affiant in *Nathanson* nakedly asserted that he had "cause to suspect and believe" that the contraband evidence was in the house. *Id.* at 44. Here, Henderson relied on a reliable confidential informant who had information and had participated with the police in controlled buys in the past, proving himself to be reliable. Second, even if the CI's information was not enough, Henderson testified to the process of the controlled buy in which she participated, and which produced crack cocaine. The fruits of this controlled buy and the controlled purchase of them, in which affiant Henderson personally participated and had firsthand knowledge (even if only by digital recording), constituted the "adequate supporting facts" which were absent in *Nathanson.* This case is therefore distinguishable.

the search warrant not be stale." (*Id.* at 6.).

The Magistrate Judge construed Warren's argument as a *Franks* challenge. *See Franks v. Delaware*, 438 U.S. 154 (1978).  Under *Franks:*

> where a defendant makes a *substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a *preponderance of the evidence*, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the fact of the affidavit.

438 U.S. at 155-56 (emphasis added).  In determining what constitutes a "substantial preliminary showing," *Franks* emphasizes that a "presumption of validity" exists with respect to an affidavit supporting the search warrant. *Id.* at 171.  To cross the preliminary threshold and warrant a *Franks* hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*  "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*  "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient." *Id.*

The Magistrate Judge correctly found that Warren did not satisfy this preliminary burden to warrant a *Franks* hearing.  The only support for Warren's conclusory assertion that Henderson was deliberately or recklessly concocting a story of an imaginary controlled buy is the fact that the December 11, 2007 controlled buy, the grounds upon which Henderson requested a search

warrant, was accompanied by less paperwork and supporting documentation than previous controlled buys. (Obj. at 6-7.)  As discussed above, Henderson's accompanying affidavit was sufficient to establish probable cause; the mere fact that previous controlled buys were accompanied by documentation that may have established *more than* probable cause, alone, does not constitute a "substantial preliminary showing" that Henderson intentionally or recklessly concocted the controlled buy and made false statements in her warrant application.[5] *Franks,* 438 U.S. at 155.  Aside from raising this speculative question, Warren made no specific arguments as to Henderson's purported misrepresentations, and provided no witness statements or explained the absence thereof.  Warren failed to make any offer of proof in support of his claim of Henderson's misrepresentation. The court agrees, therefore, that a "substantial preliminary showing" has not been met, and that Warren is not entitled to a *Franks* hearing.

## C. Staleness

Warren's staleness argument is entirely premised on his earlier argument that the December 11th controlled buy did not take place, thus making the warrant stale, as the most recent other controlled buy at Warren's residence had taken place approximately six days before.[6]

---

[5]  Aside from the fact that mere hours had passed between the controlled buy and Henderson's warrant application, perhaps preventing the opportunity to complete additional paperwork and then obviating the need for such paperwork once the warrant was issued, Henderson testified that she did not obtain a written informant statement for the December 11th controlled buy because she already had the entire transaction digitally recorded.  Moreover, Henderson explained that the deposition that Warren claims to be mysteriously missing from the December 11th controlled buy was unnecessary, for she only does official depositions when the district attorney seeks to obtain a warrant and for indictment purposes; this time, she personally applied for the warrant to the judge with her affidavit, rendering an extra official deposition unnecessary.

[6]  Warren acknowledges that "there is no set time limit on staleness." (Obj. at 6.) *See also United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000) ("There is no particular rule or

Warren conceded at the suppression hearing, however, that if the December 11th controlled buy did, in fact, take place, then the staleness argument fails. As discussed above, there was sufficient evidence in the affidavit to constitute probable cause, and there was insufficient evidence to constitute a preliminary showing that the controlled buy did not occur, which would warrant a separate *Franks* hearing. Warren's staleness argument thus fails as a consequence of his inability to provide sufficient preliminary threshold evidence of his underlying claim that the controlled buy did not take place.

**D. The *Leon* Good Faith Exception**

Alternatively, the Magistrate Judge found, even if there were not probable cause for the search warrant, the *Leon* good faith exception to the Exclusionary Rule would apply. (Recomm. at 13-15 (*citing United States v. Leon*, 468 U.S. 897 (1984).) *Leon* presents the converse of the *Franks* rule: whereas *Franks* held that an intentional or reckless falsehood in an affidavit relied upon by magistrates in issuing a warrant will result in suppression of the evidence, *Leon*, 468 U.S. at 923 (*citing Franks*), an "objectively reasonable reliance on a subsequently invalidated search warrant" will be immune from suppression and thus exempt from the exclusionary rule, *id.* at 922. The *Leon* exception is premised on the principle that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." *United States v.*

---

time limit for when information becomes stale.") A staleness analysis, instead, involves a fact-specific determination using several guiding factors, including the length of time but also the nature of the suspected crime. *Bervaldi*, 226 F.3d at 1264 (discussing staleness factors). This court needs not perform a staleness analysis with respect to any alleged December 5, 2007 controlled buy, however, because it was not made a basis for the warrant application, and because Warren concedes that if this court finds the December 11, 2007 controlled buy actually took place, which it does, then the warrant is not stale.

*Robinson*, 336 F.3d at 1295-96 (11th Cir. 2003); *Massachusetts v. Sheppard*, 468 U.S. 981, 981-

82 (1984) ("The exclusionary rule should not be applied when the officer conducting the search

acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate

that subsequently is determined to be invalid.").

The application of *Leon* might apply as an alternative holding to the first argument, that

there is not sufficient supporting documentation to support probable cause, but might not apply

to the second argument that Henderson intentionally or recklessly concocted an imaginary

controlled buy in her warrant application – such action, if found to be true, would hardly seem to

be "objectively reasonable reliance" on the validity of the warrant. *See United States v. Martin*,

297 F.3d 1308, 1313 (11th Cir. 2002) (one of four situations where *Leon* good faith exception

doesn't apply is when the warrant-issuing judge was "misled by information in an affidavit that

the affiant knew was false or would have known was false except for his reckless disregard of the

truth"); *United States v. Cross*, 928 F.2d 1030, 1040 n.24 ("In [*Leon*], the Court reaffirmed

*Franks* even while at the same time carving out a 'good faith' exception to the exclusionary rule

for warrants unsupported by probable cause."); *United States v. Davidson*, Civ. No. 03-0517-CB,

2006 U.S. Dist. LEXIS 27927, at *30 (S.D. Ala. May 1, 2006) ("Collectively, [*Leon* and *Franks*]

hold that evidence seized pursuant to a search warrant obtained by false statements is admissible

if the false statements were made in good faith, *Leon,* at 912, but if the false statements were

deliberately or recklessly made, the evidence must be excluded *unless* the search warrant

affidavit contained sufficient probable cause without the false statements. *Franks,* at 171-72.").

Therefore, *Leon* may not act as an alternative holding to both of Warren's arguments, because an

opposite finding on the *Franks* issue, assuming there would be no probable cause if there was no

10

controlled buy, would create a situation where the *Leon* exception didn't apply.  This court holds,

therefore, that to the extent that it is correct in deciding that Henderson made no intentional or

reckless false statements in her affidavit, but yet incorrect in its decision that there was probable

cause in the affidavit, the *Leon* good faith exception would apply in such a situation. This court

therefore adopts the magistrate court's Recommendation as modified with respect to this issue.

## V. CONCLUSION

In accordance with this Memorandum Opinion, the Recommendation of the Magistrate

Judge is adopted in full, as modified, and it is ORDERED as follows:

1. The Defendant's Motion to Suppress is hereby DENIED in full.

DONE this 31st day of July, 2008

   /s/ W. Harold Albritton               
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE